UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS

JOHNNY D. STOKES                                         NO. 10-0108-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of the defendant, Johnny D. Stokes, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. In this motion, the defendant asserts that his guilty plea was unknowing and involuntary, that he was provided with ineffective assistance of counsel, that the conviction and sentence has resulted in a miscarriage of justice, and that he is innocent of the charge levied against him. The government has filed an opposition to the defendant's motion. There is no need for oral argument or for an evidentiary hearing.

On January 23, 2009, a search warrant was executed at the defendant's residence in Baton Rouge, Louisiana, and a quantity of cocaine base, also known as "crack" cocaine, was discovered in the residence. In July, 2010, a federal grand jury indicted the defendant on one count of possession with intent to distribute five (5) or more grams of a substance containing a detectable amount of cocaine base, a violation of 21 U.S.C. § 841(a)(1). On November 3, 2010, the defendant withdrew his prior plea of not guilty and entered a plea of guilty in connection with this charge. As part of the plea agreement, the defendant waived his right to appeal and to seek collateral review except under certain narrow circumstances not pertinent hereto and except as to claims of alleged ineffective assistance of counsel, and the United States agreed that no

additional criminal charges would be brought against the defendant arising out of the offenses alleged in the indictment. In addition, the United States agreed not to seek to enhance the defendant's punishment because of one or more prior felony drug convictions.

At the defendant's guilty plea colloquy, conducted on November 3, 2010, the defendant testified in open court that he had received and reviewed a copy of the indictment with his attorney and that he understood the elements of the offense which the government would be required to prove if he proceeded to trial. Consistent with Rule 11 of the Federal Rules of Criminal Procedure, the trial judge explained to the defendant the maximum punishment that the defendant could receive. Specifically, the judge informed the defendant that he faced a prison term of not less than five (5) and not more than forty (40) years, a potential fine of up to $ 2,000,000.00, potential restitution to any victims, a mandatory special assessment in the amount of $ 100.00, and a period of post-custody supervised release of not less than four (4) years. The Court further expressly informed the defendant that the Court would take the federal sentencing guidelines into consideration in arriving at an appropriate sentence but was not obligated to follow same, that the Court would defer sentencing until after the preparation and dissemination of a Presentence Investigation Report ("PSR"), and that any discussions which the defendant may have had regarding the sentence he might receive were only rough estimates and could not be relied upon because the Court had not yet determined what the sentence would be and would not do so until after review of the PSR and any objections thereto. The defendant signified in open court that he understood and acquiesced in what the Court had stated.

The trial judge then explained to the defendant the rights which the defendant was giving up by entering into the plea agreement, including <u>inter alia</u> the right to a trial before a jury of his

peers, to confront and cross-examine the witnesses against him and to compel the government to establish his guilt beyond a reasonable doubt. The defendant signified his willingness to voluntarily relinquish these rights.

The defendant's written plea agreement was then read into the record, which agreement included much of the information summarized above. In addition, the written plea agreement expressly provided that the defendant was relinquishing his right to appeal and to collaterally attack his conviction and sentence except, as pertinent hereto, as to claims relative to the alleged ineffective assistance of counsel. The defendant signified that he understood and agreed to the terms of the written plea agreement and acknowledged that he had discussed same with his attorney and had signed his name thereto. He signified his wish to plead guilty to the charge levied against him. The defendant further testified that he had had sufficient time to discuss his case with his attorney, that he had no objection to the legal representation which had been provided to him, that no promises had been made with regard to the ultimate sentence he might receive, and that no one had threatened or forced him to plead guilty.

Finally, the factual predicate for the defendant's plea agreement was read into the record. This factual statement, contained in the plea agreement and signed by the defendant, recited that a search warrant had been executed at the defendant's residence on January 23, 2009, and that, upon entry, officers found the defendant attempting to dispose of a quantity of crack cocaine - later determined to be 9.5 grams in weight - in the kitchen garbage disposal. Additional drugs were also found at various locations within the kitchen. The defendant agreed that this factual recitation was accurate and that he was in fact guilty of the offense charged against him.

A PSR was thereafter prepared and made available to the parties on December 21, 2010, and a revised PSR was disseminated on January 21, 2011.  In the revised version of the PSR, the defendant's Criminal History Category was calculated to be II, and his Base Offense Level was calculated to be 26, predicated upon the amount of drugs attributed to him.  An additional two (2) points were added to the Base Offense Level because of the discovery of a firearm in the defendant's vehicle at the time of the search, and three (3) points were deducted because of the defendant's acceptance of responsibility and assistance to the Government.  The amended PSR ultimately recommended a final Total Offense Level of 25 points for the defendant which, with a Criminal History Category of II, resulted in a sentencing guideline range of between 63 and 78 months in confinement.

The defendant, through his attorney, filed a written objection to the PSR which was addressed by the Court at a sentencing hearing conducted on August 10, 2011.  The defendant did not object, however, either prior to or at the hearing, to the two-point enhancement for possession of a firearm.  After entertaining and ruling on the defendant's objections, the Court adopted the findings of fact and conclusions of law contained in the PSR and sentenced the defendant to the maximum guidelines range of 78 months in confinement, to a 5-year period of post-confinement supervision, to a fine in the amount of $ 5,000.00, and to a mandatory monetary assessment in the amount of $ 100.00. The defendant did not appeal from the conviction or sentence.

On November 19, 2011, the defendant filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[1]  The defendant asserts that (1) his guilty plea was rendered unknowing and involuntary because the trial court failed to explain that his sentence could be enhanced by the presence of a firearm, (2) he was provided with ineffective assistance of counsel because his trial attorney failed to investigate or explain the potential firearm enhancement and thereby coerced, threatened and forced him to plead guilty "to a gun charge" that was not included in the indictment, (3) he was denied due process and given an illegal sentence because he was not indicted for the "gun charge" that was used to enhance his sentence, and (4) he is actually innocent of the "gun charge" used to enhance the sentence.  As a result of the foregoing, the defendant contends that his guilty plea should be vacated and withdrawn.

## Legal Analysis

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  United States v. Frady, 456 U.S. 152, 166 (1982).  When a defendant has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that his conviction is fair and final.  United States v. Cervantes, 132 F.3d 1106 (5th Cir. 1998), citing United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc), cert. denied, 502 U.S. 1076 (1992).  "As a result, review of

---

1. Although the defendant's pro se motion was docketed as filed in this Court on November 29, 2011, the Court will apply the "mailbox rule" articulated in Houston v. Lack, 487 U.S. 266, (1988), pursuant to which an inmate petitioner is deemed to have filed a habeas corpus pleading on the date that he places it in the prison mailing system, and not on the date that it is ultimately received and docketed by the Court.  Accordingly, inasmuch as the defendant signed the instant motion on November 19, 2011, the Court will utilize that date as the date of the defendant's filing.

convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." Id.  This procedural bar does not apply, however, to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).  As a general rule, a valid guilty plea waives all non-jurisdictional defects, including any ineffective-assistance-of-counsel claims, unless the ineffective-assistance claims affected the voluntariness of the plea.  Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1993), cert. denied, 466 U.S. 906 (1984).

The courts of this Circuit have repeatedly held that, as was done in the instant case, a defendant may waive his right to appellate review and to collateral review under 28 U.S.C. § 2255. See United States v. White, 307 F.3d 336, 339 (5th Cir. 2002).  In evaluating whether a defendant's waiver is effective to bar such review, the Court conducts a two-step inquiry, asking (1) whether the waiver was voluntary and intelligent, and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement and employing normal principles of contract interpretation.  United States v. Bond, 414 F.3d 542, 544 (5th Cir. 2005), citing United States v. McKinney, 406 F.3d 744, 746-47 (5th Cir. 2005).  In order for a defendant's guilty plea to be voluntary and intelligent, the defendant must have understood the true nature of the charges against him and the direct consequences of his plea, and he must not have been induced to plead guilty by coercion, intimidation, unmet promises, misrepresentation or faulty legal advice.  See Brady v. United States, 397 U.S. 742, 755 (1970).  In order for a

waiver of appeal and collateral review rights to be voluntary and intelligent, the defendant must have known both that he had a right to seek appellate and collateral review and that he was giving up that right.  United States v. Portillo, 18 F.3d 290, 292 (5th Cir.), cert. denied, 513 U.S. 893 (1994).  If the plea and waiver themselves were knowing, intelligent and voluntary, "the guilty plea sustains the conviction and sentence and the waiver can be enforced."  United States v. White, supra, at 343-44.  In other words, where the record of a plea colloquy clearly evidences (1) that a defendant has read and understood the plea agreement and (2) that he raised no objections regarding the waiver of appeal provisions, "the defendant will be held to the bargain to which he agreed."  United States v. Portillo, supra, at 292-93.  Notwithstanding, it is important to note that even where a defendant has waived the right to appellate and collateral review, a claim of ineffective assistance of counsel may survive such a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself."  United States v. White, supra, at 343.

     In the instant case, the record clearly establishes that the defendant's plea and waiver were voluntary and intelligent and were not themselves the product of any alleged ineffective assistance of counsel or deficiency in the plea colloquy.  As discussed above, the transcript of the defendant's plea colloquy reflects that he was advised, among other things, of the charge against him, of the statutory maximum term of imprisonment which he faced, of the rights which he was giving up by entering into the plea, of the Court's obligation to take into account (but not necessarily to follow) the United States Sentencing Guidelines, and of the effect of the waiver of his rights to appeal and to seek collateral review except under certain conditions.  The defendant signified that he had read and understood the plea agreement, that he agreed to the terms thereof,

that he was satisfied with the representation provided by his attorney, that he had not relied upon any promises, inducements, intimidation or coercion, and that he was willing to accept the terms of the plea agreement. Considering that "[s]olemn declarations in open court carry a strong presumption of verity," creating a "formidable barrier in any subsequent collateral proceedings," Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), these specific acknowledgments by the defendant go far in establishing that the plea agreement and waiver were entered into knowingly, voluntarily and intelligently.

Notwithstanding the foregoing, the defendant contends in his first asserted ground for relief that his plea was neither knowing nor voluntary because he was not advised by the Court during his Rule 11 plea colloquy of the potential enhancement of his sentence based upon the "gun charge" that was not included in the indictment. This contention is without merit. Rule 11 of the Federal Rules of Criminal Procedure provides, in pertinent part:

> (b)(1)  Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
>         \*              \*              \*              \*
>
> (F) the defendant's waiver of ... trial rights if the court accepts a plea of guilty or nolo contendere;
>
> (G) the nature of each charge to which the defendant is pleading;
>
> (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;
>
> (I) any mandatory minimum penalty;
>
> (J) any applicable forfeiture;
>
> (K) the court's authority to order restitution;

> (L) the court's obligation to impose a special assessment;
>
> (M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); and
>
> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.
>
> (2) ... Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

The language of Rule 11 has been found to concern only statutory penalties and does not require a sentencing court to make predictions regarding the application of the sentencing guidelines before accepting a guilty plea. United States v. Hoster, 988 F.2d 1374, 1379 (5th Cir. 1993), citing United States v. White, 912 F.2d 754, 756 (5th Cir.), cert. denied, 498 U.S. 989 (1990) ("Rule 11 does not require a district judge to 'calculate and explain the Guidelines sentence' before accepting a guilty plea"). Thus, the trial court did not err by failing to advise the defendant of potential enhancements to his sentence based on the defendant's relevant conduct, and such failure did not render the plea involuntary and unknowing. There is no dispute that prior to acceptance of the plea, the Court advised the defendant regarding the above-enumerated matters, including the minimum and maximum potential prison term and fine which he faced for the offense charged, and this is all that was technically required in order for the defendant to have been informed of the "consequences of [his] guilty plea". United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990). The mere fact that the defendant may have been unaware of the potential firearm enhancement does not render his plea unknowing or involuntary. See United States v. Minotta-Gonzalez, 232 F.3d 208, n. 9 (5th Cir. 2000) ("'Due process does not mandate

... either notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall'"); Stinnett v. United States, 2007 WL 2375765 (N.D. Tex. August 16, 2007) (finding that "the fact that [the defendant] was unaware that the firearm enhancement would be added to his offense level ... does not render his plea unknowing or unintelligent"), citing Barbee v. Ruth, 678 F.2d 634, 635 (5th Cir.), cert. denied, 459 U.S. 867 (1982). This claim, therefore, is subject to summary dismissal.

Further, the plea colloquy was not deficient, as contended by the defendant, because the trial court "fail[ed] to inform him of being indicted for [the referenced] gun charge." As previously noted, the defendant was not in fact indicted for possession of a firearm, so there was no deficiency in the trial court's failure to advise of a charge in the indictment which did not exist. Nor was there any requirement that the defendant be indicted for possession of a firearm in order for such possession to form a basis for enhancement under the Sentencing Guidelines. "Consideration of relevant conduct in the selection of a defendant's sentence within the range of permissible punishment established by Congress for his offense of conviction is not the equivalent of prosecuting the defendant for an offense additional to his offense of conviction." United States v. Hoster, supra, at 1378, citing, United States v. Kinder, 946 F.2d 362, 367 (5th Cir. 1991), cert. denied, 503 U.S. 987 (1992). This claim, therefore, is also subject to summary dismissal.

The defendant's next contention is that he was provided with ineffective assistance of counsel in connection with the plea agreement. In this regard, a habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

    (1)    That his counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

    (2)    That the deficient performance prejudiced his defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel. Id.

To satisfy the deficiency prong of the Strickland standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See, e.g., Martin v. McCotter, 796 F.2d 813, 816 (5th Cir. 1986), cert. denied, 479 U.S. 1057 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin v. McCotter, supra, at 817. Great deference is given to counsel's exercise of professional judgment. Id., at 816. Bridge v. Lynaugh, supra, at 773.

If the defendant satisfies the first prong of the Strickland test, his petition must also affirmatively demonstrate prejudice resulting from the alleged errors. Earvin v. Lynaugh, 860 F.2d 623, 627 (5th Cir. 1988), cert. denied, 489 U.S. 1091 (1989). To satisfy the prejudice prong of the Strickland test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding. Strickland v. Washington, supra, at

693.  Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  Martin v. McCotter, supra, at 816.  The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  Id. at 816-17.

The above showing is one that the defendant cannot meet in the instant case.  Specifically, the record of this case, together with the defendant's testimony at his re-arraignment colloquy, clearly establish that the defendant's decision to plead guilty was not coerced and that it was entirely knowing, intelligent and voluntary.

As a general rule, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath.  United States v. Cervantes, supra, at 1110, citing United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, supra, at 73-74.  Indeed, the Fifth Circuit accords "great weight to the defendant's statements at the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  And any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight."  United States v. Abreo, 30 F.3d 29, 32 (5th Cir.), cert. denied, 513 U.S. 1064 (1994).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  Blackledge v. Allison, supra, at 74.

In the instant case, the defendant's sworn statements at his guilty plea colloquy provide persuasive evidence that he fully understood the nature of the charge levied against him and the

12

rights he was giving up under the plea agreement.  The defendant admitted at the colloquy that he had gone over the plea agreement with his counsel, that he understood same, and that he wished to plead guilty to the charge in accordance with the plea agreement.  He signified his understanding of the charge after explanation thereof by the district judge.  Finally, he affirmatively asserted that he was satisfied with the assistance of his attorney, that he had not been coerced or forced to plead guilty, that the decision to plead guilty was his own (after consultation with his attorney), and that he had not been promised any particular length of sentence by his attorney or by anyone else.  These statements, made under oath, provide compelling evidence of the voluntariness of the defendant's plea.

Although the defendant now contends that his attorney coerced, threatened and forced him to plead guilty "as to a gun charge" that was not included in the indictment, this assertion is both entirely conclusory and is not credible on the face of the record.  The defendant provides no details whatever as to the nature of any alleged threat or coercion, provides neither his own affidavit nor that of any reliable third parties, and provides no information as to when the purported threat was made or at what location.  As a general rule, a habeas petitioner is required to supply specific details which provide an "independent indicia of the likely merit of [the] allegations" when contravening sworn statements given at a plea colloquy and when asserting that extra-judicial threats or promises induced him to plead guilty.  See United States v. Cervantes, supra, at 1110; Sandoval-Moschetto v. United States, 2013 WL 321767 (W.D. Tex. Jan. 25, 2013); Barajas-Sanchez v. United States, 2012 WL 6049008 (N.D. Tex. Dec. 4, 2012).  Further, the defendant cannot credibly be heard to assert in this case that he was coerced into pleading guilty to a "gun charge" when the record is clear that no gun charge was in fact lodged

against him. The defendant in fact pleaded guilty only to possessing, with the intent to distribute, five or more grams of crack cocaine, and he does not assert that he did not intend to plead guilty to that offense. Further, he was fully advised of the potential maximum sentence for the charged offense and that the length of his sentence would be determined based upon information provided in a subsequently-prepared PSR. Although the defendant is apparently upset that the presence of a firearm at the time of his arrest was utilized to increase the guideline range for his sentence, the law is clear, as above noted that there was no need for him to have been indicted in connection with the firearm in order for the firearm to have been used to enhance the guideline range. There is no support whatever, therefore, for the defendant's contention that he was forced, as a result of threats or coercion, to enter into the plea in the instant case. This claim, accordingly, is subject to summary dismissal as a matter of law.

The defendant also contends that his attorney was ineffective for failing to provide advice regarding the potential enhancement based upon the presence of the firearm at the time of his arrest. Courts which have addressed this issue, however, have found no ineffective assistance of counsel where the defendant's attorney has failed to warn of possible enhancements under the Sentencing Guidelines. See United States v. Collins, 2009 WL 910842 (S.D. Miss. April 1, 2009). See also Thomas v. United States, 27 F.3d 321, 327 (8th Cir. 1994) (finding that, inasmuch as a district court is only required to advise a defendant of the maximum and minimum sentences which he faces, and is not required to inform the defendant that the applicable Sentencing Guideline range may include enhancements based upon findings of relevant conduct, the failure of an attorney to inform his client of possible enhancements does not show that the attorney's representation has fallen below an objective standard of reasonableness, particularly

where the court has advised the defendant that the ultimate sentence will be determined only after receipt and review of a PSR). Accordingly, there can be no finding in the instant case that the defendant's attorney provided ineffective assistance of counsel for failing to advise of possible enhancements under the Sentencing Guidelines, and this claim must be rejected.

Finally, the defendant makes a conclusory assertion that his attorney failed to investigate the underlying "gun charge" which, had the defendant understood it, would have caused him to proceed to trial on the charge levied against him. The defendant makes no assertion whatever, however, as to what an additional investigation would have revealed or as to what defenses may have been available in connection with the enhancement. When alleging that counsel has been ineffective for failing to fully investigate a case, "[a] movant 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome' of the proceeding." Potts v. United States, 566 F.Supp.2d 525, 537 (N.D. Tex. 2008), quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). In the instant case, the defendant makes no more than a conclusory assertion regarding the alleged failure of his attorney to investigate the alleged "gun charge", and this does not meet the Strickland standard.[2]

In the defendant's third and fourth assignments of error, he contends that his sentence has resulted in a miscarriage of justice because of the referenced "gun charge" and that he is

---

2.   The defendant does not assert in this case that his attorney was ineffective for failing to object at sentencing to the 2-point enhancement of his Base Offense Level based upon the presence of the firearm at the time of his arrest. Nor does the defendant contest the factual finding in the PSR that a firearm was found in his vehicle at the time of his arrest. A PSR "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." United State v. Trujillo, 502 F.3d 353, 357 (5th Cir. 2007). The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." Id.

"actual[ly] innocent" of the referenced "gun charge." These claims, however, besides being meritless, are foreclosed by the defendant's waiver of his right to appeal or seek collateral review of his sentence, which waiver was included in the terms of his plea agreement. Moreover, the defendant does not assert that he is actually innocent of the drug charge to which he in fact pled guilty. Accordingly, his claim of actual innocence is not subject to consideration by the Court. Cf., United States v. Rouser, 20 F.3d 1171 (5th Cir. 1994) (rejecting a defendant's claim of actual innocence relative to charges to which he had not pleaded guilty).

## RECOMMENDATION

It is recommended that the defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed in Baton Rouge, Louisiana, on July 3, 2013.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                                        **CRIMINAL ACTION**

**VERSUS**

**JOHNNY STOKES**                                                                         **NO. 10-0108-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 3, 2013.

                                          **RICHARD L. BOURGEOIS, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**